MaddeN, Judge,
delivered the opinion of the court:
By a purchase order contract dated June 7, 1945, the plaintiff agreed to furnish to the War Department 40,000 plastic containers at $1.70 each. The plaintiff manufactured and furnished 16,000 such containers, and was paid $1.70 each for them. On April 16, 1946, the War Department terminated the plaintiff’s right to furnish the remaining 24,000 containers. The plaintiff does not complain of the termination. Its claim is founded upon the fact that its costs of manufacturing the 16,000 containers which it did furnish were much more than the amount which it received for them. It claims that, under its contract, properly interpreted, it had a right to be paid those higher costs, plus a reasonable profit.
The contract here involved was initiated by the issuance on May 22, 1945, by the Philadelphia Quartermaster Depot of the War Department of its Informal Request for Quotations, Serial No. X-213 (45) calling for price quotations on the manufacture of the plastic containers desired. Such a request was sent to the plaintiff, among others. The request had attached to it several pages of provisions which were to *145 be a part of the contract, if a bidder got a contract; Among these papers, including an amendment which was sent out a day or two later to replace an obviously garbled paragraph in the original papers, the following language appeared:
REDETERMINATION OE PRICE BT FORMULA
(a) Agreement to redetermine price. The Government and the contractor recognize that the costs of performing this contract cannot be accurately estimated at the time of its execution and that the contract price may therefore be too high. They therefore agree that the contract price fixed in the bid shall be redetermined in accordance with this Article on the basis of the actual experience of the contractor in performing part of the contract. They agree that the cost of producing 40% of the items cafied for hereunder (hereinafter called the “test run”) shall therefore be used as the general basis for the redetermination of price.
(b) Estimate oe costs. The contractor represents that the contract price fixed in this bid is based on a total estimated cost of $-, itemized as follows.*
* * * * *
(d) Method op redetermination. (1) Upon the filing of the date [sic] required by section (c) hereof, the Contracting Officer and the contractor shall determine the costs of producing the “test run” and the cost of producing the remainder of the items called for by the contract as indicated by the cost of production of the “test run” and the cost estimate submitted by the contractor under Section (c). Any disagreement as to the experienced costs or estimated costs shall be subject to Disputes Article.
(e) Payments. Pending the redetermination of the contract price hereunder the Government shall pay for all items delivered hereunder at the price fixed in this Bid. Upon the redetermination of the price hereunder the contractor shall apply as a credit against payment for subsequent deliveries or shall repay to the Government, as the Contracting Officer may direct, an amount equal to the difference between the price paid on all items theretofore delivered and the redetermined price for such items; and the Government shall pay for all items thereafter delivered the redetermined price minus any *146 such credit. If, before the price is redetermined hereunder, any amount paid under this contract has been included in any renegotiation agreement made under Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942, as amended, no refund or credit shall be required hereunder with respect to that amount.
On May 28,1945, the plaintiff submitted its bid on the form which had been sent it, quoting a unit price of $1.83 per container. The Government’s contracting officer telephoned the plaintiff’s Mr. Skinner and, in effect, asked him to reduce the plaintiff’s bid. Mr. Skinner telephoned a bid of $1.70 per unit. The contracting officer asked him to put this bid in a telegram, and, on Mr. Skinner’s request, told him how to word the telegram. Mr. Skinner then sent the following telegram:
REQUISITION P-G-196-45 REVISE QUOTATION $1.70 PER UNIT EOB CHICAGO DELIVERIES AS QUOTED REDETERMINATION DOWNWARD AFTER 40 PERCENT COMPLETION
As we have seen, a contract was then awarded the plaintiff and, it alleges, its costs of performance were higher than the amount it received. It claims that it had the right to have the contract price redetermined upon the basis of its actual costs. It sought and was denied such a redetermination, and sues for the amount which such a redetermination would have given it.
The Government points to the statement in article (a) quoted above, that the parties recognize that the contract price may be too high, and they therefore agree that it may be redetermined. It points to the statement in article (d) that upon a redetermination the contractor shall credit the Government with the difference between the contract price and the redetermined price as to units already paid for. It points to the telegram quoted above speaking of redetermination downward.
Each of these statements in the contract writings negatives any idea of an increase in the contract price as a result of redetermination. If the writings had spoken merely of re- *147 determination after partial performance, it might have been assumed that the redetermination would work both ways. But with these pointed references to a one-sided redetermination, no one could have indulged such an assumption.
The plaintiff says that in the telephone conversation between its Mr. Skinner and the Government's contracting officer, referred to above, in which the wording of the telegram there quoted was discussed, the Government’s contracting officer said that “redetermination had to be downward as well as upward.” We think Mr. Skinner, who so testified many years after the conversation, must have been mistaken. With the papers already in his hands implying redetermination downward only, and not even hinting at redetermination upward, it would have been remarkable that, having received an oral suggestion that there might be redetermination upward, he would immediately and without protest sign a telegram which negatived that favorable suggestion.
The inference which we have drawn from the circumstances is confirmed by the fact that in the administration of the stereotyped contract provisions which were inserted in this contract, it was understood by the Army people who used them that the “Redetermination of Price by Formula” provisions which were used here, were not intended and were never used to provide for redetermination both upward and downward. Another set of provisions had been prepared and was available for cases where such redetermination was to be permitted.
The plaintiff points to the fact that the contract papers in this case omitted one paragraph of the regular stereotyped provisions. That was the second paragraph of article (d), the first paragraph of which is quoted above. The omitted paragraph was as follows:
(2) If the cost of producing the “preliminary run” and the “test run” plus the cost of production of the remainder of the items called for by the contract as determined under subsection (1) above, is less than the total estimated cost stated in section (b), the total price to be paid pursuant to Article * * * shall be reduced by the amount of the difference. The redetermined price shall be evidenced by a supplemental agreement.
*148 The Government does not explain the omission. It may have been mere inadvertence, as was the garbled version of article (a) which was first sent ont. If it had been included, it would merely have been a third and more direct statement that redetermination worked only one way. Its omission might have been embarrassing to the Government if it had had occasion to try to redetermine the plaintiff’s contract price downward. But we think its omission does not help the plaintiff, since without it, as with it, all references were to downward redetermination only.
The plaintiff’s petition will be dismissed.
It is so ordered.
Whitakek, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court having considered the evidence, the reports of Commissioner Boald A. Hogenson, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a corporation of the State of New York with its principal office and place of business at Chicago, Illinois.
2. Under date of May 22,1945, the defendant through its Philadelphia Quartermaster Depot, Philadelphia, Pennsylvania, issued its Informal Bequest for Quotations, Serial No. X-213(45),.Bequisition P-G-196(45), calling for price quotations on the manufacture of 150,000 plastic containers. Bidders were requested to execute and return the cost and bid forms “in accordance with the terms specified on this page [1st page], on continuation sheets 2 to 4 inclusive, and General Provisions dated 20 January 1945 sheets 1 to 10 incl., and Appendix No. 5,” and to wire quotations in as soon as possible, to be followed by the bid form, properly executed, not later than noon, May 28,1945.
3. Sheet No. 5 of the General Provisions of the said Informal Bequest for Quotations contained the following provision:
Delats-damages : (a) If the Contractor refuses or fails to make deliveries of the supplies within the time *149 specified or any extension thereof, tbe Government * * * may, by a notice in writing from the Contracting Officer to the Contractor of its intention to terminate under this Article, terminate the right of the Contractor to deliver all or any portion of the undelivered material or supplies * * *.
Sheet No. 6 contained the following:
Disputes : Except as otherwise specifically provided in the contract, all disputes concerning questions of fact which may arise under the contract, and which are not disposed of by mutual agreement, shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail a copy thereof to the Contractor at his address shown therein. Within 30 days from said mailing the Contractor may appeal in writing to the Secretary of War, whose written decision or that of his designated representative or representatives thereon shall be final and conclusive upon the parties hereto. * * *
Appendix No. 5 of the said Informal Request for Quotations contained the following provisions:
REDETERMINATION OF PRICE BY FORMULA
(a) Agreement to redetermine price. The Government and the contractor recognize that the costs of performing this contract cannot be accurately estimated at the time of its execution, and that the contract price may therefore[1] agree that the contract price fixed in the Informal Bid shall be redetermined in accordance with this Article on the basis of the actual experience of the contractor in performing part of the contract. They agree that the cost of producing 40% of the items called for hereunder (hereinafter called the “test run”) shall therefore be used as the general basis for the rede-termination of price.
(b) Estimate of costs. The contractor represents that the contract price fixed in this bid is based on a total estimated cost of $_, itemized as follows.*
*150 SEE COST BREAKDOWN ATTACHED TO CONTRACTOR’S BID
A. Factory cost
1. Direct materials
2. Direct productive labor
3. Direct engineering labor
4. Miscellaneous direct factory charges
5. Indirect factory expenses**
(State basis of allocation)
Total factory cost
B. Other manufacturing cost
C. Miscellaneous direct expenses
D. Indirect engineering expenses
E. Expenses of distribution, servicing and administration
F. Guarantee expenses.
(c) Cost statements. (1) Within 15 days after the completion of the production of the “test run” the contractor shall submit to the Contracting Officer the following data:
(i) Separate statements showing the costs of producing the “test run” itemized in the same way as the estimated cost stated in section (b) above.
(ii) Estimates of the cost of producing the items to be delivered during the remainder of the contract based upon the previous cost experience of the contractor and upon all other relevant factors; and
(iii) Proposed revised prices under the contract.
(2) The contractor will maintain books, records, and accounts so as to reflect accurately and segregate clearly the costs of performing this contract during the “test run.” For this purpose the contractor may follow the cost accounting system regularly used by it, if the Contracting Officer finds it is adequate and in accordance with sound accounting practice. The statements showing costs experienced by the contractor under this contract shall be based upon such books, records, and accounts and shall be certified as correct by two officers of the contractor or by an independent public accountant. The contractor shall submit his books, records, and accounts to such examination and audit as the Contracting Officer may request.
(d) Method of redetermination. (1) Upon the filing of the date [sic] required by section (c) hereof, the Contracting Officer and the contractor shall determine the costs of producing the “test run” and the cost of producing the remainder of the items called for by the contract as indicated by the cost of production of the “test run” and the cost estimate submitted by the contractor *151 under Section (c). Any disagreement as to the experienced costs or estimated costs shall be subject to Disputes Article.
(e) PatmeNts. Pending the redetermination of the contract price hereunder the Government shall pay for all items delivered hereunder at the price fixed in this Bid. Upon the redetermination of the price hereunder the contractor shall apply as a credit against payment for subsequent deliveries or shall repay to the Government, as the Contracting Officer may direct, an amount equal to the difference between the price paid on all items theretofore delivered and the redetermined price for such items; and the Government shall pay for all items thereafter delivered the redetermined price minus any such credit. If, before the price is redetermined hereunder, any amount paid, under this contract has been included in any renegotiation agreement made under Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942, as amended, no refund or credit shall be required hereunder with respect to that amount.
(f) Eenegotiation. Any redetermination of the contract price made under this Article is without prejudice to the determination of any excessive profits of the contractor upon subsequent renegotiation under Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942, as amended, or the contract article inserted herein pursuant to that Act.
4. Under date of May 23, 1945, the defendant issued Amendment No. 1 to the said Informal Request for Quotations which deleted paragraph (a) of the “Redetermination of Price by Formula,” quoted in finding No. 3, and substituted in lieu thereof the following:
(a) Ageeement to redetermine prioe. The Government and the contractor recognize that the costs of performing this contract cannot be accurately estimated at the time of its execution and that the contract price may therefore be too high. They therefore agree that the contract price fixed in the bid shall be redetermined in accordance with this Article on the basis of the actual experience of the contractor in performing part of the contract. They agree that the cost of producing 40% of the items called for hereunder (hereinafter called the “test run”) shall therefore be used as the general basis for the redetermination of price.
*152 Said amendment directed tbat a copy thereof be signed by the bidder and attached to the bid.
The plaintiff received a copy of defendant’s Informal Request for Quotations and shortly thereafter a copy of Amendment No. 1.
5. On May 28,1945, plaintiff submitted its bid to the Philadelphia Quartermaster Depot on the form furnished by defendant, being a copy of the aforementioned Informal Request for Quotations. The plaintiff therein quoted a unit price of $1.88 for the manufacture of the plastic containers. At the same time plaintiff provided a signed copy of Amendment No. 1.
6. The following telegram was sent by the plaintiff’s Director of Purchases, G. C. Skinner, to Lieutenant J. H. Gimbel, Philadelphia Quartermaster Depot, on May 31, 1945:
REQUISITION P-G-196-45 REVISE QUOTATION $1.70 PER UNIT FOB CHICAGO DELIVERIES AS QUOTED REDTERMINATION [sic] DOWNWARD AFTER 40 PERCENT COMPLETION
7. Prior to this telegraphic communication, Lieutenant Gimbel had telephoned Mr. Skinner and advised him that another bidder had submitted a lower quotation than plaintiff’s figure of $1.83 per unit, and requested a recomputation by the plaintiff. Skinner telephoned the price of $1.70 per unit, and Gimbel requested the submission of this figure by wire. Skinner asked how the telegram should be worded, and the Lieutenant stated the language used in the above-quoted telegram.
8. On June 7, 1945, the following telegraphic notice of award was sent by Lieutenant Gimbel to the plaintiff :
REURBID X-213 28 MAY 1945 AND TEL 31 MAY 1945 PURCHASE ORDER NUMBER 25544 AWARDED YOU 40,000 EACH CONTAINERS DECORATION PLASTIC at 1.70 EACH AS PER SPECIFICATION PQD NUMBER 508 FOB CHICAGO ILLINOIS DELIVERIES 5,350 EACH JULY 8,000 EACH AUGUST 8,000 EACH SEPTEMBER 9,325 EACH OCTOBER 9,325 EACH NOVEMBER AA-1 AND AA-2X PRIORITY CERTIFICATE NUMBER 3162000 END SFQDP PBPDI (GIM-BEL)
*153 9. Under date of June 7, 1945, the defendant issued its Purchase Order No. 25544, War Department Contract Form No. 18, to the plaintiff. This Purchase Order stated in part:
In accordance with your informal bid dated 31 May 1945 J-^“®13(45) please furnish the following on the terms specified on both sides of this page, on continuation sheets 1 to 4 inclusive, and Under the same terms and conditions as Informal Bid X-213(45) attached hereto * * *.
No document was physically attached, and the provisions of defendant’s Informal Request for Quotations and of plaintiff’s bid form, quoted in finding No. 3, were not restated in the Purchase Order.
The Purchase Order was signed by defendant’s contracting officer, lieutenant J. H. Gimbel, and not by the plaintiff.
10. The Purchase Order requested the plaintiff to furnish 40,000 plastic containers, f. o. b. Chicago, Illinois, at $1.70 each for the total amount of $68,000 to be delivered at the rate of 5,350 by July 31, 1945; 8,000 additional by August 31, 1945; 8,000 additional by September 30, 1945; 9,325 additional by October 31, 1945; and the balance by November 30, 1945. It further provided in part as follows:
Note : Subject to redetermination price after 40% of order is completed, as shown in attached bid form.
11. The contract price-revision article (set forth in Appendix No. 5 of the Informal Request for Quotations quoted in Findings Nos. 3 and 4) was derived from and authorized by War Department Procurement Regulations, as promulgated in 8 Federal Register 5210, et seq.
12. The underlying policy of the said price-revision article is set forth in Sections 81.230-81.233 of these regulations, and the authorized form thereof, in Section 81.341 (a). The regulations contained instructions governing the use of the article in Sections 81.1220-81.1226. From the above regulations, and from the testimony of the drafter of the said article and other witnesses, it is clear that it was the intention of the agents of the Government who drafted and caused to be promulgated the authorized form of the article, that the *154 article provided solely for downward and not upward revision of the contract price.
The above-cited regulations were not expressly made a part of or incorporated by reference into the contract between the parties.
13. The authorized form of the article as contained in the above-cited regulations provided for a “preliminary run” in addition to the “test run” prescribed in the contract form of the article. Section 81.1223 (b) (2) of the regulations provides as follows:
The “preliminary run” is intended to cover the initial performance while production is getting under way and before costs have become stabilized. Accordingly it should include the percentage of the work or period which the contracting officer estimates will be needed before costs level off and become reasonably typical. The “test run” should cover an adequate period after such costs are expected to become reasonably stable. Unless these two periods will be completed before forty percent of the contract is performed this article will not be used without special permission from the Director, Purchases Division, Headquarters Army Service Forces.
With unimportant deviations in language, the two articles were otherwise the same except that paragraph (d) (2) of the authorized article was entirely omitted from the contract article. That paragraph provides as follows:
If the cost of producing the “preliminary run” and the “test run” plus the cost of production of the remainder of the items called for by the contract as determined under subsection (1) above, is less than the total estimated cost stated in section (b), the total price to be paid pursuant to Article * * * shall be reduced by the amount of the difference. The redetermined price shall be evh denced by a supplemental agreement.
The instructions set forth in Section 81.1223 (a) of the said regulations permitted minor deviations to be made in the authorized article, but provided that it was not to be changed to allow redetermination of the price upward. In his testimony, the drafter of the authorized article stated that the elimination of paragraph (d) (2) from the contract article was not a modification authorized by the regulations, and *155 that in his opinion the omission rendered the contract article nugatory.
14. The Quartermaster Corps in administering contracts containing provisions identical with the price-revision article in this case has interpreted such provisions to permit a downward price revision only. It is reasonable to conclude from the testimony of witnesses generally familiar with the administrative practices of the Quartermaster Corps that the authorized article, or any modification thereof, was uniformly interpreted to provide only for reduction of contract prices.
15. Several forms of price-revision articles have been used by the War Department. Promulgated at the same time as the article involved in this case was an article for price revision by negotiation, set forth in Section 81.341 (b) of the above-cited regulations. This latter article expressly provided for an upward or downward revision of the contract price, and was intended to be used only in special cases where the developmental or experimental nature of the item to be purchased, or the lack of previous production experience, or other causes, prevented reliable estimates of costs when the contract was made. 8 F. R. 5248, Sec. 81.1224.
16. In 1945, subsequent to the date of the issuance of the requests for bids in this case, a revision of the War Department Procurement Regulations was approved and promulgated.
Article 14 of Supplemental Contract Provisions entitled “Revision of Price,” which is quoted on page 14 of the petition filed in the case of Victory Sport Apparel Corporation v. The United States of America, Court of Claims case No. 48984, was authorized in the revision as Form II-B, set forth in Section 803.373 (f), 10 F. R. 7096. It was one of the nine articles adopted in an attempt to refine the existing pricing articles on the basis of prior experience. The circumstances and conditions under which it was to be used are set forth in Section 803.373 (b), 10 F. R. 7095.
17. The authorized article involved in this case was omitted from the 1945 amendments to the regulations. However, the new Form IY provided solely for downward revision of price but by negotiation after completion or termination of *156 the contract, rather than by formula after a test run. Sec. 808.375,10 F. E. 7098-7099.
The contract in the Victory Sport Apparel Corporation case was one of eighteen contracts awarded in June 1946 for deliveries to be completed within eighteen months thereafter, and the use of the price-revision article, permitting upward or downward revision of the contract price, contemplated that changes in market conditions and costs could be expected within such a lapse of time. The performance of the instant contract vas to be completed within six months, from June through November 1945.
18. The plaintiff manufactured and furnished to the defendant 16,000 plastic containers and was paid at the rate of $1.70 each, or a total of $27,200.
By letter dated April 16, 1946, Lieutenant Alfred E. Pricolo, defendant’s successor contracting officer, terminated plaintiff’s right to deliver 24,000 containers pursuant to the Delays-damages clause quoted in finding 3.
Plaintiff’s claim in this case is for the reasonable cost incurred in the furnishing of the 16,000 containers to the defendant in excess of the amount paid at the unit price of $1.70.
The Court, by order dated February 1, 1950, allowed defendant’s motion to limit the evidence before the Commissioner to the issue of liability.
19. War Department Procurement Eegulation No. 13 (Federal Eegister, February 1945, pages 1902, 1903) was admitted in evidence as plaintiff’s exhibit 3 and by reference is made a part of this report.
20. The plaintiff by letter requested upward revision of the contract price on September 19, 1946. In reply, the plaintiff received a letter, dated September 30, 1946, from the New York Quartermaster Purchasing Office, signed for the Commanding Officer by J. W. Allen, Assistant, in which it was stated that under the provisions of the “Eedetermination of Price by Formula” article, the contract price might be revised downward only and that office had no authority to make the upward revision requested.
In reply to plaintiff’s request for a fuller explanation of the position taken by that office, plaintiff received a letter, *157 dated October 24,1946, over the signature of Mr. J. W. Allen, in which reference was made to the amended redetermination article and to the plaintiff’s telegram of May 31, 1945, and it was concluded that the New York Office in view of those matters had no authority to undertake any upward revision of price.
21.Under date of December 20, 1946, the plaintiff forwarded the following letter to the War Department Board of Contract Appeals, New York Quartermaster Purchasing Office:
This is to notify you that we received your letter of October 24,1946, and we are planning an appeal.
Will you please acknowledge receipt of this letter and also inform us as to the length of time we have in which to file said appeal.
22. By letter dated December 27, 1946, addressed to and received by the plaintiff, David D. Davis, defendant’s successor contracting officer, acknowledged receipt of plaintiff’s letter dated December 20,1946, stated that no provision was made in the contract for upward adjustment of the bid price, and made the determination that under the terms of the “Re-determination of Price by Formula” clause, he had no authority to undertake any upward price revision. In reply to the plaintiff’s inquiry concerning the length of time it had in which to file an appeal, Mr. Davis referred to the “Disputes” article of the contract, quoted therefrom, and suggested that any appeal which the plaintiff might desire to file might be mailed to his office for forwarding to the War Department Board of Contract Appeals.
The plaintiff took no further action prior to June 28,1947.
23. By letter to the plaintiff dated July 15,1947, Colonel W. E. Pheris, defendant’s Director of Procurement, Quartermaster Corps, wrote as follows:
Reference is had to your letter of June 28, 1947, in which you request certain stated findings of fact from the Contracting Officer pursuant to the “Redetermination of Price by Formula” and the “Disputes” Articles of your contract. Although you make no reference to the contract involved, from prior dealings it is presumed that you refer to Purchase Order No. 25544 (Cont. W36-030-qm-19795) dated 7 June 1945.
*158 Your attention is invited to a Findings dated 27 December 1946 signed by David D. Davis, Successor Contracting Officer setting forth the determination of the said Successor Contracting Officer and his conclusion of your rights under the aforesaid Price Redetermination Article. In this communication, your attention was also invited to the “Disputes” Article of your contract and the provisions therein relating to appeal.
The Successor Contracting Officer having by said letter of 27 December 1946 made a ruling which sufficiently informed you that your request for price redetermination had been considered and denied, no further finding may now be made as this office is without authority to consider your request any further.
This response to your letter of June 28, 1947, is not to be construed as a waiver by the Government of any rights heretofore accrued thereto under subject contract.
No offer in evidence was made of any letter of the plaintiff such as that referred to by Colonel Pheris. The opinion of the Army Board of Contract Appeals, admitted in evidence as plaintiff’s exhibit 5, summarizes such a letter as follows:
On 28 June 1947 the appellant [plaintiff herein] addressed a letter to the New York Purchasing Office requesting that the contract price should be redetermined to be $4.54 per unit and requesting the contracting officer to make his decision in writing and to mail it a copy in order that the dispute would be subject to the “Disputes” article of the contract.
24. The opinion of the Army Board of Contract Appeals, dated September 13, 1948, recites that a hearing was held in the Board’s offices at Washington, D. C., on plaintiff’s appeal, at which time plaintiff was represented by counsel and Mr. G. C. Skinner, its Director of Purchases, and that the only question involved in the appeal was whether or not under the provisions of the contract the contracting officer had authority to revise upward the unit price of the containers, that the contracting officer denied that he had such authority, whereas the plaintiff contended that the contract permitted upward revision and that it should be reimbursed for its additional costs over and above the unit price of $1.70 each.
The Board concluded that the plaintiff failed to take an appeal from a decision of the contracting officer within 30 days and therefore the decision of the contracting officer be *159 came final and conclusive, and the Board was without jurisdiction to consider the matter.
The Board also expressed its opinion that the contract as amended did not provide for an upward revision of the unit prices and that the contracting officer was correct in his decision denying plaintiff’s request to revise the prices upward.
CONCLUSION OP LAW
Upon the foregoing findings of fact which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and the petition is therefore dismissed.

This breakdown may be altered to suit particular circumstances. Any reserves for contingencies should be stated separately and clearly identified.

 The obvious omission in this language was corrected as shown in finding 4.

This breakdown may be altered to suit particular circumstances. Any reserves for contingencies should be stated separately and clearly identified.

State separately the estimated amount of each of the following items included:
(a) Normal depreciation
(b) Special amortization